1

```
              UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
                   ALEXANDRIA DIVISION

UNITED STATES OF AMERICA     .     Criminal No. 1:10cr313
                             .
    vs.                      .     Alexandria, Virginia
                             .     February 25, 2011
JOSHUA BEHROUZ NABATKHORIAN, .     9:05 a.m.
                             .
          Defendant.         .     EXCERPT
                             .
 . . . . . . . . . . .

                   TRANSCRIPT OF SENTENCING
           BEFORE THE HONORABLE LEONIE M. BRINKEMA
                UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

FOR THE GOVERNMENT:        JOHN EISINGER, AUSA
                           United States Attorney's Office
                           2100 Jamieson Avenue
                           Alexandria, VA 22314


FOR THE DEFENDANT:         PETER D. GREENSPUN, ESQ.
                           Greenspun, Shapiro, Davis &
                           Leary, P.C.
                           3955 Chain Bridge Road
                           Second Floor
                           Fairfax, VA 22030


OFFICIAL COURT REPORTER:   ANNELIESE J. THOMSON, RDR, CRR
                           U.S. District Court, Fifth Floor
                           401 Courthouse Square
                           Alexandria, VA 22314
                           (703)299-8595



                       (Pages 1 - 12)




        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

                                                                 2

1                          P R O C E E D I N G S
2                            (Defendant present.)
3              THE CLERK:  Criminal Case 10-313, United States of
4    America v. Joshua Behrouz Nabatkhorian.  Would counsel please note
5    their appearances for the record.
6              MR. EISINGER:  Good morning, Your Honor.  John Eisinger
7    representing the United States.
8              THE COURT:  Good morning.
9              MR. GREENSPUN:  Good morning, Your Honor.  Peter
10   Greenspun with Mr. Nabatkhorian.
11             THE COURT:  All right, this matter comes on for
12   sentencing.  Mr. Greenspun, have you had enough time to thoroughly
13   go over the presentence report yourself and with your client?
14             MR. GREENSPUN:  I have, Your Honor, and we have.
15             THE COURT:  Are there any -- other than the -- well, you
16   don't have an issue with the guidelines, so are there any factual
17   corrections, changes, additions, or deletions you want made to the
18   report?
19             MR. GREENSPUN:  No, Your Honor.
20             THE COURT:  All right. As you know, the Probation
21   Office calculated the offense level as a 25, with your client
22   having a criminal history of I.  Now, the Probation Office did
23   give Mr. Nabatkhorian the two-point acceptance of responsibility
24   reduction to the offense level, and the government objects to that
25   but has admitted that -- or agreed that if the Court finds the two

1  points properly given, they would move for the third point
2  reduction, which would bring it down to the 25 that's here.
3          The issue about acceptance of responsibility is close --
4  is a close one in this case. It's close because the far majority
5  of the statements that I have seen from the defendant have been
6  more of personal remorse for the shame brought upon his family,
7  his community, and not a whole lot of attention in my view paid to
8  the victim and her family.
9          And, of course, as you know, there is now evidence in
10 the record that members of the support community for the defendant
11 have been less than charitable towards the victim. I'm not
12 holding that against your client. I don't think that would be
13 fair, but I do think there was enough recognition of the defendant
14 and her family, it was minimal, but there's just enough, he
15 basically just squeaks over the line, so I am going to give him
16 the acceptance, with a concern that it's close, and that will very
17 much affect how I sentence the defendant.
18         So I'm going to go ahead and use the guidelines as
19 reported in the probation report, which means that the range on
20 these factors will be 57 to 71 months. The period of supervised
21 release is a minimum of five years to the possibility of life.
22 The fine range is 10,000 to 100,000 dollars, and there's a $100
23 special assessment.
24         And you're not disputing those guideline calculations?
25         MR. GREENSPUN: That's correct, Your Honor.

4

1       THE COURT:  All right, that's fine.
2       MR. GREENSPUN:  Your Honor, to the extent we just
3  received yesterday information about restitution -- now, recall
4  that in my papers, we suggested that if provided with the
5  documentation, that therapy costs should properly be addressed as
6  restitution to Mr. Nabatkhorian.  We received a great deal more
7  late yesterday afternoon, and I think the government and probation
8  officer only received it yesterday.
9       I don't know how Your Honor wants to address that, if at
10 all.  I believe that there's 60 days to address that after
11 sentencing, so I -- my suggestion is is that we see where we are,
12 if we can work through that, and we would submit an agreement to
13 the Court.  Otherwise, if we have to have a hearing later on, we
14 can do it on that issue.
15      THE COURT:  Well, we may be able to resolve that today.
16      MR. GREENSPUN:  Okay.
17      THE COURT:  I mean, I've looked at that, too.  I am
18 troubled by the fact this came in at the last minute.  It should
19 have been done -- especially because this sentencing hearing was
20 continued.  There was plenty of time for this information to be
21 brought to the Court, and it does put both defense counsel, the
22 Probation Office, and the Court at a distinct disadvantage to be
23 getting it so late, but I think we can address it fairly, and you
24 can advise me if you object to how I plan to do it, but we'll get
25 to that.

1        MR. GREENSPUN:  Sure.
2        THE COURT:  Do you want to do that first, the
3    restitution issue first?
4        MR. GREENSPUN:  However --
5        THE COURT:  All right.
6        MR. GREENSPUN:  It's Your Honor's hearing, so --
7        THE COURT:  I mean, the largest amount in the
8    restitution request is moving expenses.
9        MR. GREENSPUN:  Right.
10       THE COURT:  I can't possibly award that.  That simply
11   was not necessary to move.  That was a personal decision on the
12   part of the family.  In addition, as I understand it, the victim's
13   mother works in Loudoun County and actually has now moved closer
14   to her work spot, but those costs, I think, are way beyond
15   anything reasonable within the field of restitution, and so I'm
16   not --
17       MR. GREENSPUN:  Judge, we had information that was
18   planned well before any of this as well.
19       THE COURT:  Well, I don't even need to hear argument on
20   that, so that entire category is out, and that is the most
21   significant amount.
22       MR. GREENSPUN:  Yes.
23       THE COURT:  In terms of the therapy, the one concern
24   that I have there is I understand that there is a victim -- in
25   fact, the $100 special assessment that we always impose in

1 criminal cases per count of conviction goes into victim
2 compensation funds. Each state has one.
3      Am I correct -- maybe the government knows this -- that
4 the victim has been working to try to tap into some of those
5 victim resources that are in Virginia?
6      MR. EISINGER: I believe that they have, Your Honor.
7 I'm not sure how successful they've been in getting that to work.
8      THE COURT: And do you, do you know as a fact, is the
9 child victim going on a weekly basis for therapy?
10      MR. EISINGER: That's my understanding, yes, Your Honor.
11      THE COURT: All right. And what about her brother?
12      MR. EISINGER: My understanding is that either the
13 mother or the brother will go with her, so they're essentially
14 going every other week, and she's going every week.
15      THE COURT: Well, again, I understand the brother had
16 preexisting issues before all of this. This may have aggravated
17 it, but remember, there was information about the move, and he had
18 issues to start with.
19      MR. EISINGER: Well, my understanding is that like the
20 victim herself, he was shunned from the school. His friends no
21 longer talked to him, he had essentially no friends, and he was
22 blamed a lot for the conduct, just like the rest of the family
23 was.
24      THE COURT: Yeah. And again, that's such a problem,
25 because to some degree, the defendant and his family could

possibly have been more active in trying to keep that from happening. I'm not holding that against him for acceptance of responsibility, but to the extent that the aftermath of all this resulted in increased injury to the victim and the victim's family, that does have to be taken into consideration at least in terms of the restitution, all right?

The, the amounts that are cited here are not in my view all that excessive given that they're looking at a five-year period for ongoing therapy for two or three people. Mr. Greenspun, I mean, the total that they're seeking is $13,000, and I plan to reduce that somewhat, because again, it's inchoate to know how far into the future that's going to go.

I thought that a reasonable sort of estimate would be $10,000 total for therapy up to this point and in the future, knowing that the -- there's a certain amount that's going to be covered by medical insurance and a very real possibility that the Victims Fund would also provide funding. Would your client object on this record to going with that number?

MR. GREENSPUN: May I just have a minute?

There's no objection, Your Honor.

THE COURT: All right. And on the medicine, I don't even know what that is. What's this medicine that's being taken, do you know?

MR. EISINGER: I'm not sure, Your Honor.

THE COURT: Was this stuff not discussed with, with your

1 office?
2 　　　　　MR. EISINGER: Unfortunately, I literally got this stuff
3 either yesterday or the day before, when I filed it.
4 　　　　　THE COURT: But, I mean, hadn't your office and your
5 Victims Unit been in contact with the victim's family and
6 explained that these types of documents certainly will be
7 considered by the Court but need to be provided and support needs
8 to be provided with them and also they should come in in a
9 reasonable amount of time?
10 　　　　　MR. EISINGER: Yes, Your Honor, but I'm afraid this is
11 what I got.
12 　　　　　THE COURT: I mean, I don't even know whether any of
13 them are on psychotropic medication, which is the only medication
14 that this defendant should have to pay for. All right.
15 　　　　　And you don't know anything else about the rest of these
16 categories?
17 　　　　　MR. EISINGER: Sorry, Your Honor.
18 　　　　　THE COURT: Well, the family visits, grandparents coming
19 out for support, that again, I think, is not a category that's
20 normally awarded. I don't find any basis or necessity for that.
21 That's a choice issue, and so I'm not going to award that
22 category.
23 　　　　　And then there's miscellaneous expenses. Now, the -- I
24 can understand needing -- since the mother was a full-time -- had
25 a full-time job, needing child care for a couple of months because

1 the child was afraid to go to school and needed some support at
2 home.  Again, though, I don't know what the hourly rate was that
3 was being paid to this nanny, and, I mean, it's so late in the
4 game for this to be coming in, and I don't know if that was an
5 overreaction.
6        I assume the child was in school part of the day, and
7 whether the nanny was there two hours a day or ten hours a day we
8 can't tell from these records.
9        MR. EISINGER:  My understanding, Your Honor, is that the
10 child was home for three months, that she didn't go to school at
11 all for that period of time.
12        THE COURT:  All right.  So she would have needed
13 somebody home with her.
14        MR. EISINGER:  Correct, Your Honor.
15        THE COURT:  Do you know what the hourly rate was that
16 this nanny was being paid?  It's not on the list that I've got.
17        MR. EISINGER:  Right.  No, I'm not sure what it is, Your
18 Honor.
19        THE COURT:  And did your office explain to the victim
20 that not only the expenses but the supporting documentation for
21 those expenses need to be provided to the Court?
22        MR. EISINGER:  I believe that they did, Your Honor.
23        THE COURT:  Again, the mother missed work and used up
24 personal and sick days.  The total is there for that.  That's not
25 a large amount, and certainly that category, I think, would be

1 properly within the area of appropriate restitution.
2       Mr. Greenspun, do you have an objection to that amount?
3       MR. GREENSPUN: No, Your Honor.
4       THE COURT: And then I don't want you to tell me where
5 the victim's family lived, but $150 for three trips to Alexandria
6 seems awfully high to me. Do you know where that's coming from?
7 Was that based on mileage and where --
8       MR. EISINGER: I'm not -- again, I'm not really sure
9 what the basis is of that, and my understanding at least is that
10 our office covers those expenses.
11       THE COURT: All right, so that doesn't need to be
12 awarded.
13       By my calculation, what would be fair so we can get all
14 of this resolved today would be, as I said earlier, to award
15 the -- in terms of restitution, $10,000 for therapy, past and for
16 the future, and that, that to me covers a reasonable amount of
17 what's here; a total of $500 for medicine, that's in the past and
18 in the future. That's again, I think, well within the range of
19 reasonableness given what we've got here to work with. And giving
20 the, the plaintiff -- the victim $1,600 for -- 1,660 for the
21 missed work and sick leave that the mother used.
22       And the only expense that I have -- I mean, I'm not
23 reluctant to impose the nanny expenses, but I don't have any idea
24 what the hourly rate was that was being paid or how many hours. I
25 would leave that as the one item that needs to be left open.

11

1  And unless you're uncomfortable with this,
2 Mr. Greenspun, what I, what I plan to do is give the victim ten
3 days to provide documentation, either cancelled checks or a
4 statement from the provider or whatever, as to what the hourly
5 rate was and how many hours this person worked, and obviously, it
6 wouldn't be any higher than the 12,800 that's being sought.  It
7 may be less than that.
8  Would your client have an objection to those being -- so
9 he'll know what the highest possible amount is, and it could be a
10 little bit lower, depending upon the documentation that comes in.
11  MR. GREENSPUN:  That's fine, Your Honor.
12  THE COURT:  All right?
13  MR. GREENSPUN:  No objection to that.
14  THE COURT:  All right.  And then -- so we will not be
15 able to have a total in the judgment order, but that judgment
16 order will be amended within two weeks, because I'm giving her ten
17 days to get it in.  All right?
18  MR. GREENSPUN:  Yes, ma'am.
19  THE COURT:  Now, I've announced then what the guideline
20 range is going to be.  We've resolved the restitution issue, and
21 I'll let the United States allocute at this point.  Mr. Eisinger,
22 I've seen what's in the -- your papers, but I'll hear any argument
23 you want to make.
24          *       *       *       *       *
25

1           *       *       *       *       *

2           THE COURT: Lastly, you are required to fulfill the
3  restitution obligation, and I think in your case there are enough
4  financial resources for that to be taken care of promptly. Again,
5  I haven't yet given you the final number, but you know what the
6  ballpark is, and it won't be anything more than that ballpark
7  limit.
8           MR. GREENSPUN: Yes.
9           THE COURT: I will have that order entered within two
10 weeks, and then I see no reason why the full restitution amount
11 cannot be paid to the victim within 120 days of that being
12 announced.
13          Is there any problem for that, Mr. Greenspun?
14          MR. GREENSPUN: I don't believe so, Your Honor.
15          *       *       *       *       *

16

17                    CERTIFICATE OF THE REPORTER
18    I certify that the foregoing is a correct excerpt of the
19 record of proceedings in the above-entitled matter.

22                                        /s/
                                   Anneliese J. Thomson